UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOCKPORT CONDOMINIUM DEVELOPMENT, INC.,        **REPORT AND RECOMMENDATION**

                                                                            Plaintiff,

                                                                                            09-CV-00492(A)(M)

v.

CITY OF LOCKPORT, NEW YORK,
MICHAEL W. TUCKER, Mayor,
HARRY J. APOLITO, Senior Building Inspector,
JAMES P. McCANN, Chief Building Inspector,

                                                                      Defendants.
_____

Before me is defendants' motion for summary judgment [28].[1] That motion, being dispositive, has been referred to me by Hon. Richard J. Arcara for preparation of a Report and Recommendation [14]. For the following reasons, I recommend that the motion be granted.

## BACKGROUND

Proceeding under 42 U.S.C. §1983, plaintiff Lockport Condominium Development, LLC ("LCD") seeks to recover damages for an alleged violation of its civil rights by defendants resulting from the delayed issuance of a building permit. Complaint [1].

Acting through its managing member, Edward E. Lewis, LCD began the approval process with the City of Lockport for a project known as Victorian Village Condominium (the "Project"), which was proposed for its property located at 501 Park Lane Circle in Lockport, New York. Defendants' Statement of Undisputed Facts [28-1], ¶¶1, 10. LCD's initial proposal

---

[1]      Bracketed references are to CM/ECF docket entries.

sought approval for 22 buildings, each with four separate condominium units, but was later reduced to 20 buildings. Id., ¶12. The Project was to be constructed in at least four phases. Id., Ex. A, p.51.

On October 3, 2005 LCD received final site plan approval with certain restrictions from the City of Lockport Planning and Zoning Board ("Planning Board") for the Project. Id., Ex. J, pp.3-4.[2] Plaintiff closed on the purchase of the property on October 20, 2005. Perley Affidavit [35], Ex. B.

Because of changes to the Project, it was presented to the Planning Board again on March 6, 2006. Defendants' Statement of Undisputed Facts [28-1], Ex. I, p.1. On March 6, 2006, the Planning Board approved construction of building #18, with the following conditions as set forth in the meeting minutes:

"1.    Upon approval of offering by State Attorney General; and

2.    Agreed will look at different types of elevations before building permit is issued, and

3.    Utility and Maintenance agreement as a failsafe measure, and

4.    Roadway from Park Lane Circle finish roadway and curbs to Building 18; and

5.    Agrees Mr. McCann can hold Certificate of Occupancy if everything is not up to his expectations; and

6.    Ponds/fencing to be discussed, and

---

[2]    The City's Zoning Ordinance (defendants' Statement of Undisputed Facts [28-1], Ex. H) requires that applications for certain building permits require the submission of a site plan to the Planning Board for approval. Id., §§190-26, 190-100(B), 190-186.

      7.      Lighting standards to be discussed at next month's meeting. Samples to be submitted for the Board's approval." Id., Ex. I, p.7.

On April 20, 2006, LCD filed an application for a building permit with the City. Id., ¶16.[3] A groundbreaking ceremony for the Project was attended by Mayor Michael Tucker on May 3, 2006. Id., Ex. B, pp.16-18.

Although the minutes of the March 6, 2006 Planning Board meeting indicated that a finished roadway and curbs were be installed to building #18 (Perley affidavit [35], Ex. C, p.7), by letter dated May 26, 2006 defendant Harry Apolito, a Senior Building Inspector for the City, informed LCD that prior to the issuance of a building permit the Building Inspection Department "is requiring a paved road, curbs, and utilities for the three . . . buildings that were approved by the . . . Planning Board". Id., Ex. E (emphasis added). According to the City's Chief Building Inspector, James P. McCann, this was a requirement imposed upon all subdivisions, and it was his understanding that the Planning Board imposed this requirement. Defendants' Statement of Undisputed Facts [28-1], Ex. B, pp.34, 43.

On June 1, 2006, Metzger Civil Engineering PLLC advised the City that it had not been paid by LCD for its project plans and other design related work for the Project, and requested that these documents be returned and not used for the issuance of the building permit. Id., Ex. K. It was not until July 3, 2006, that the City was notified that this issue had been resolved. Id., Ex. L.

---

      [3]      The building permit application was signed by Mr. Lewis on August 28, 2006. Defendants' Statement of Undisputed Facts [28-1], Ex. F.

The site work by the principal site work contractor for the Project was performed between July 6, 2006 and August 14, 2006.  Id., Ex. A, p.65.  Following completion of the site work, Inspector Apolito issued a memo dated August 16, 2006, advising LCD that "the building permit will be issued contingent on the city of Lockport Building Inspection Department Receiving the Proper Insurances."  Perley Affidavit [35], Ex. G.  Although Inspector Apolito testified that he was required to ensure that all contractors are licensed, this was usually done as part of the initial review of the building permit application,  and that the Building Inspection Department would have insurance information on file for all contractors licensed in the City.  Defendants' Statement of Undisputed Facts [28-1], Ex. D, pp.27-28.

In a letter dated August 25, 2006, Inspector Apolito advised LCD that "upon the recording the condominium declaration and bylaws for the [Project]. . . , a building permit shall be issued."  Defendants' Statement of Undisputed Facts, Ex. D, p.83.  After Mr. Lewis consulted with the New York State Attorney General's Office about this requirement, it was later withdrawn by the Building Inspection Department, but Mr. Lewis conceded that this did not delay the construction of the Project.  Id., Ex. A, p.143.

In a meeting with Mayor Tucker on September 6, 2008, Mr. Lewis expressed his concerns about the conduct of the Building Inspection Department.   Ex. A, pp. 6, 122; Ex. C, p.23.  Following this meeting, Mayor Tucker advised John Ottaviano, the City Attorney, of the concerns expressed by Mr. Lewis, prompting an investigation by Mr. Ottaviano, which concluded that the concerns were unfounded.  Id., Ex. C, pp.23-25. A building permit for building #18 was issued on September 18, 2006 (id., Ex. F) followed by a certificate of occupancy on May 29, 2007.  Id., Ex. G.  On September 22, 2006, work on the Project was

stopped by Inspector Apolio on the grounds that a separate deed had to be filed for the first phase of the Project, and the deed was filed the same day.  Id., Ex. A, pp.122-124.

In June 2007 New York State declined to declare the Project's condominium plan effective.  Defendants' Statement of Undisputed Facts [28-1], ¶24.  According to Mr. Lewis, this occurred because the City advised the State of the liens and judgments against the property.  Id., Ex. A, p.157.  Thereafter, in a November 24, 2008 Buffalo News article, "Tucker admitted . . . the city was intentionally delaying the project in hopes of an investigation.  'We went as far as contacting the attorney general's office.  They, said they had nothing on him,' Tucker said.  '[Chief Building Inspector James P.] McCann made them jump through hoops to get some permits, but if all their paperwork is in order, you can't not give him a permit.'"  Perley Affidavit [35], Ex. I.

LCD alleges that "[t]he improper and illegal delays occasioned in the issuance of the original building permit so impaired the cost recovery for the project that plaintiff was unable to meet its financial obligations to its creditors resulting in the project becoming financially incapable of proceeding after the construction of the first four units."  Complaint [1], ¶27. According to LCD, defendants' conduct was motivated by their desire "to seek favorable treatment" for Denny Hayden, a sales representative for 84 Lumber, a vendor that unsuccessfully bid on the Project.  Id., ¶¶30-33.

Plaintiff seeks compensatory damages of $5,000,000, as well as punitive damages. Id., ¶¶40, 43.  The individual defendants are sued in their individual and official capacities.  Id., ¶¶6-8.  Although the Complaint identifies no specific constitutional rights which were violated,

in its opposition to defendants' motion for summary judgment LCD claims a violation of its due process rights. LCD's Memorandum of Law [34], p.4.

In moving for summary judgment, defendants argue (1) that the individual defendants are entitled to qualified immunity (defendants' Memorandum of Law [28-15], Point II(A)); (2) that LCD does not have a constitutionally protected property interest in the issuance of a building permit in five months or less (id., Point II(B)); that even if it could establish such a constitutional right, LCD has not established that the alleged delay in issuing the permit was a result of an official policy or custom of the City (id, Point II(B)(3)); (3) that the proximate cause of the Project's failure was not the delay in the issuance of the building permit but rather the fact that it was underfunded (id., Point II(C)); (4) that LCD's claims for lost profits is impermissibly speculative (id., Point II(D)); and (5) that the City and the individual defendants in their official capacities are immune from LCD's punitive damages claims (id., Point II(E)).[4]

## ANALYSIS

A.   **Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must

---

[4] Since defendants' Memorandum of Law is not paginated, I have cited their arguments by point headings, rather than by page number, where possible.

examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' "  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B.      Monell Liability**

LCD alleges that "[b]ased upon the principals [*sic*] of *Respondeat Superior*, the City of Lockport is responsible for the actions of defendants". Complaint [1], ¶36.  However, "a municipality cannot be held liable under §1983 on a *respondeat superior* theory. . . . Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under §1983." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691, 694 (1978).

"Because respondeat superior liability is not permissible . . . the courts must apply 'rigorous standards of culpability and causation . . . to ensure that' the indirect-causation theory not result in the municipality's being 'held liable solely for the actions of its employee.'" Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000), cert. denied, 531 U.S. 813 (2000)(*quoting* Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997)).  A claim against a government officer in his or her official capacity under §1983 is tantamount to a claim against the municipality itself, thus "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom".  Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).

Without citing to any evidence in the record, LCD argues that "[t]he City of Lockport, through their acts and omissions in their dealings with the LCD, exhibited a consistent

custom of depriving Plaintiff of their constitutionally protected property interest". LCD's Memorandum of Law [34], p.9.[5] This is insufficient to raise a triable issue of fact as to whether defendants' alleged unconstitutional conduct against plaintiff occurred pursuant to a City policy, custom or practice. *See* Fenner v. City of New York, 392 Fed.Appx. 892, 894 (2d Cir. 2010)(summary order) (Plaintiff "alleged only that certain New York City Police Department officers entered his apartment and seized him in violation of his Fourth Amendment rights; he pled no facts, nor offered any evidence, to show that these actions occurred pursuant to a City policy or practice. Fenner's claims thus failed as a matter of law"). Therefore, I recommend that all claims against the City and the individual defendants in their official capacities be dismissed.[6]

**B.     Violation of LCD's Constitutional Rights**

"In order to maintain a Section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13

---

[5] Although a custom or policy may be established if the challenged conduct was engaged in by governmental officials responsible for establishing municipal policies (*see* Pembaur v. City of Cincinnati, 475 U.S. 469, 483–84 (1986)), LCD does not make this argument. Moreover, even if Mayor Tucker could be considered a policy making official, there is no evidence that the Building Inspection Department acted at his direction in imposing the conditions for building permit approval. In fact, LCD was ultimately granted a building permit shortly after Mr. Lewis met with Mayor Tucker.

[6] Even if the official capacity claims remained, LCD is precluded from recovering punitive damages from the City defendants. *See* Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 317 (2d Cir. 1999).

F.3d 545, 547 (2d Cir.1994). Defendants do not dispute that they were acting under color of state law; instead, they challenge whether LCD has established a due process violation.

### 1. Substantive Due Process

"To state a substantive due process claim, LCD must establish "that it had a valid 'property interest' in a benefit that was entitled to constitutional protection at the time it was deprived of that benefit" and that the city's "action in depriving it of that interest was so outrageously arbitrary as to be a gross abuse of governmental authority." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999). Defendants challenge the first prong of this test, namely whether LCD has a protected property interest in obtaining the issuance of a building permit in less than five months.[7]

"[A] plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest. . . . The Federal Constitution does not create property interests. Instead, such interests are derived from other sources, such as state law." West Farms Associates v. State Traffic Commission of State of Connecticut, 951 F.2d 469, 472 (2d Cir. 1991), cert. denied, 503 U.S. 985 (1992) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). The Second Circuit "uses a strict 'entitlement' test to determine whether a party's interest is protectable under the Fourteenth Amendment." Zahara v. Town of Southold,

---

[7] In their initial motion papers, defendants did not move for summary judgment on the second prong (*i.e.*, whether their conduct was not so outrageously arbitrary as to be a gross abuse of governmental authority). Changing course, they raise this argument for the first time in their reply. Sutter Reply Affidavit [36], ¶15. However, I will not consider arguments raised for the first time in a reply. See Mills v. Luplow, 391 Fed.Appx. 948, 2010 WL 3466805, *2 n.3 (2d Cir. 2010) (Summary Order).

48 F.3d 674, 680 (2d Cir. 1995). To have a protectable interest, the applicant must have "a clear entitlement to the approval sought from the government official or administrative body." Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir), cert. denied, 515 U.S. 1131 (1995). In determining whether a clear entitlement exists, the focus is "on the amount of discretion committed to the issuing authority, not the estimated probability that the authority would act favorably in a particular case." Id. "A clear entitlement, and, in turn, a constitutionally protected property interest, exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 -379 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996). "[T]he question of whether an applicant has a property interest will normally be a matter of law for the court." RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989), cert. denied, 493 U.S. 893 (1989).

LCD argues that it has a property interest "in timely issuance [of the building permit], especially where a delay effectively functions as a denial". LCD's Memorandum of Law [34], p.4. Although the Second Circuit has acknowledged "that, in certain circumstances, a party may have a constitutionally protectable 'property interest' in a benefit that affects land use- *i.e.* a building permit", it has declined to generally "recognize . . . the existence of such a 'property interest' in the *procedures* giving rise to such an interest." Zahra, 48 F.3d at 681 (emphasis in original).

The City's Zoning Ordinance sets forth the following procedure for issuance of a building permit:

- "The Building Inspector shall examine all applications for building permits, issue permits for the construction . . . of

    all uses which are in accordance with the requirements of this chapter". Defendants' Statement of Undisputed Facts [28-1], Ex. H, §190-191.

•  "Issuance of permits. . . It shall be the duty of the Building Inspector . . . to issue a building permit, provided that compliance with all requirements of this chapter are met, and that review and action by any other board or agency, if any, as called for in this chapter have been complied with and all necessary approvals secured thereof". Id., §190-192(C)(1).

•  "Denial of Permits. When an application for a proposed development does not meet the requirements of this chapter the Building Inspector . . . shall refuse to issue a building permit". Id., §190-192(D).

  Since LCD was eventually issued a building permit, its claims arise not from the property interest itself (*i.e.*, the building permit), but rather from the delay in the issuance of that permit. However, as explained by the Second Circuit, "[t]he mere existence of *procedures* for obtaining a permit or certificate do not, in and of themselves, create constitutional 'property interests.'" Zahra, 48 F.3d 681-682 (emphasis in original). A contrary rule would invite "constitutional challenges at virtually every stage of the building process in municipalities." Id. at 682. Thus, the Second Circuit has "decline[d] to announce a rule that would obligate federal courts to consider endless numbers of alleged 'property interests' arising not from the benefits themselves, but as extensions of existing or sought property interests." Id. *See* Highland Development, Inc. v. Duchesne County, 505 F.Supp.2d 1129, 1155 (D.Utah 2007)("Plaintiffs

-11-

certainly do not have a property interest in the manner in which the inspection and permitting process occurs").[8]

LCD presents no argument as to why this case should fall outside of this general rule and does not challenge defendants' reliance on Zahra (defendants' Memorandum of Law [28-15], Point B), or attempt to distinguish it. *See* LCD's Memorandum of Law [34], p. 10 (only challenging defendants' reliance on Zahra in support of their qualified immunity argument). LCD's reliance on In the Matter of C. DeMasco Scrap Iron & Metal Corp. v. Zirk, 62 A.D.2d 92 (2d Dep't. 1978), aff'd, 46 N.Y.2d 864 (1979) is also unavailing. That case involved a proceeding under New York Civil Practice Law and Rules Article 78 seeking to overturn the denial of a building permit, and did not address the question of whether the applicant has a constitutionally protected property interest in the issuance of the permit. *See* Zahra, 48 F.3d at 682 ("Though Zahra can argue that a property interest in the insulation inspection arose from [the state court] decision ordering it, the issue we decide herein is whether such an interest rises to a constitutional level"); Bower Associates v. Town of Pleasant Valley, 2 N.Y.3d 617, 629 (2004)

---

[8] It has also been recognized that "[f]reedom from delay in receiving a building permit is not [a] 'fundamental liberty interests'" sufficient to support a substantive due process claim. *See* City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 200 (2003) (Scalia, J. concurring). One court has recognized that the absence of a fundamental liberty interest undermines any claim to a property interest in the issuance of a building permit without delay. *See* Emmert Industrial Corp. v. City of Milwaukee, 450 F.Supp.2d 1164, 1175 n.5 (D.Or. 2006), aff'd, 307 Fed.Appx. 65 (9th Cir. 2009) ("The argument that Emmert's constitutional property interest was violated by the City's failure to issue permits in a timely enough fashion to enable Emmert to move the House is directly undercut by Justice Scalia's statement that '[f]reedom from delay in receiving a . . . permit is not among these 'fundamental liberty interests'" *quoting* City of Cuyahoga Falls, 538 U.S. at 200).

(rejecting the argument "that victory in an article 78 proceeding—a finding that conduct was arbitrary, capricious and without rational basis, or an abuse of discretion, or even action beyond or outside a board's discretion—establishes a constitutionally protected property interest").

The City's Zoning Ordinance does not contain any requirement that the building inspector complete his review and approval of a building permit application within any designated time frame. In fact, as occurred here, the timing of the issuance of the building permit is largely driven by the applicant's compliance with all requirements of the City's Zoning Ordinance, as well as any conditions imposed by the Planning Board.[9] LCD's failure to establish the existence of a constitutionally protected property interest is fatal to its substantive due process claim.

### 2. Procedural Due Process

"[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." Rivera-Powell v. New York City Board. of Elections, 470 F.3d 458, 468 n.12 (2d Cir. 2006). The availability of an Article 78 proceeding to challenge the delay in the issuance of the building permit defeats LCD's procedural due process claim. *See* Deperno v. Town of Verona, 2011 WL 4499293, *7 (N.D.N.Y. 2011) ("the availability of Article 78 administrative review of the ZBA's determination and procedural process under state

---

[9] LCD does not dispute defendants' argument that it was not automatically entitled to a building permit from the building inspector. Defendant's Memorandum of Law [28-15], p.9. Thus, I need not determine whether it had a constitutionally protected property interest in the result of its building permit application (*see* Villager Pond, Inc., 56 F.3d at 379), rather than in the process leading to the issuance of the permit.

law . . . precludes a finding that the defendants' conduct violated plaintiff's rights of procedural due process under the Fourteenth Amendment. Because plaintiff can pursue these claims by means of an adequate postdeprivation remedy in the state courts, he has failed to allege a federal constitutional violation").

Since LCD has not established a due process violation, I need not address defendants' remaining arguments.[10]

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [28] be granted.  Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 5, 2012 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

---

[10] For example, although defendants argue that they have not violated the Equal Protection Clause (defendants' Memorandum of Law [28-15], Point II(B)(2)), neither in its Complaint nor in its opposition to the summary judgment motion does LCD raise an equal protection argument.

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 15, 2012

/s/ Jeremiah J. McCarthy  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge